STATE OF CONNECTICUT *v.* JOSEPH HOSKIE
(AC 22786)

Schaller, West and Shea, Js.

Submitted on briefs October 28, 2002—officially released January 28, 2003

*Joseph Visone* filed a brief for the appellant (defendant).

*Michael Dearington*, state's attorney, and *Lisa A. Riggione* and *Maxine V. Wilensky*, senior assistant state's attorneys, filed a brief for the appellee (state).

*Opinion*

WEST, J. The defendant, Joseph Hoskie, appeals from the judgment of conviction, rendered following a trial to the court, of two counts of kidnapping in the first degree in violation of General Statutes § 53a-92 and one count of unlawful restraint in violation of General Statutes § 53a-95. On appeal, the defendant claims that the trial court improperly (1) admitted prior misconduct evidence and (2) allowed the state to qualify a police officer as an expert witness where the state had not provided any notice prior to trial that the witness would testify as an expert. We affirm the judgment of the trial court.

The court reasonably could have found the following facts. The victim resided alone in a first floor apartment in a six unit building at 466 Legion Avenue in New Haven. On the evening of March 14, 2000, the victim returned home from church at approximately 10:30 p.m. Unbeknownst to the victim, the defendant, who was a former boyfriend, had secreted himself on the second floor landing of the apartment building and was lying in wait for her. As the victim was unlocking the door to her apartment, the defendant rushed down stairs and assaulted her, pinning her against the wall and wresting the apartment keys from her. The victim attempted to get away from the defendant but was unable to over-

power him. As the defendant, still holding the victim, attempted to unlock the door to the apartment, one of the victim's neighbors, Vanessa Richardson, was drawn into the hallway by the victim's screams. Richardson asked the victim if she wanted her to call the police, and the victim responded in the affirmative. At that point, the defendant dragged the victim from the apartment building and across a field in front of the apartment building. The defendant then forced the victim into his car.

The defendant drove the victim to Milford. He told the victim that he was going to tie her up, place her in a basement and kill her. He stopped the automobile on a side street. While parked, the defendant received a call on his cellular phone indicating that the police were looking for him. In apparent response to that call, the defendant became enraged and began hitting the victim while repeating that he hated her and that he was going to kill her. He then proceeded to strangle the victim, although he released his grip before she lost consciousness.

The defendant subsequently dragged the victim from the vehicle and retrieved a roll of masking tape from the trunk. He told the victim that he was going to tape her eyes and mouth, and repeated his threat that he was going to place her in a basement and kill her. After several failed attempts to tape the victim's mouth, the defendant ordered her to place a call to the New Haven police department. The defendant instructed the victim to tell the police that she was dining with a male friend at a restaurant in Bridgeport and that she was fine. During the ensuing conversation, the victim told the police to disregard Richardson's earlier telephone call requesting police assistance. Following that conversation, the police called the victim back twice in an attempt to ascertain her location and to make sure that she was unharmed.

Following those conversations with the police, the defendant took the victim to his apartment in West Haven. Despite the presence of a police patrol car circling the parking lot of his apartment building, the defendant brought the victim into his apartment. Shortly thereafter, the police knocked on the door to the apartment, and the victim, at the defendant's direction, opened the door. The police escorted the victim outside and arrested the defendant. Additional facts will be set forth as necessary.

I

We first address the defendant's claim that the court improperly admitted evidence of prior uncharged misconduct. Specifically, the defendant argues that the court should not have admitted evidence that he threatened the victim on several occasions prior to the incident for which he was charged. We disagree.

"As a general rule, evidence of a defendant's prior crimes or misconduct is not admissible. . . . The rationale of this rule is to guard against its use merely to show an evil disposition of an accused, and especially the predisposition to commit the crime with which he is now charged. . . . [Prior misconduct] [e]vidence may be admissible, however, for other purposes, such as to prove knowledge, intent, motive, and common scheme or design, if the trial court determines, in the exercise of judicial discretion, that the probative value of the evidence outweighs its prejudicial tendency. . . .

"We have developed a two part test to determine the admissibility of such evidence. First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh [its] prejudicial effect . . . . Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only where abuse of discretion is

manifest or where an injustice appears to have been done. . . . On review . . . therefore, every reasonable presumption should be given in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *State* v. *O'Neil*, 261 Conn. 49, 80–81, 801 A.2d 730 (2002).

In the present case, the prosecution sought to introduce seven incidents of prior misconduct, arguing that they were relevant to establish the defendant's intent to injure or to terrorize the victim.[1] Following a hearing on the state's motion to introduce the prior misconduct evidence, the court ruled that the state would be allowed to present evidence regarding four of those seven incidents.[2] The defendant claims that the introduction of the prior uncharged misconduct was more prejudicial than probative because the state had "ample other evidence" to establish his intent to physically harm or to terrorize the victim. We disagree.

We note that the defendant does not dispute that the prior misconduct evidence was relevant to the issue of intent. His sole claim regarding that evidence is that

[1] General Statutes § 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with the intent to (A) inflict physical injury upon him . . . or (C) terrorize him . . . ."

[2] The first incident of prior misconduct that the court heard about involved an encounter between the parties on December 17, 1999. The victim had gone to the home of the defendant's brother to deliver some of the defendant's mail, and the defendant confronted her regarding the ownership of a car. During the argument, the defendant grabbed the victim by the collar and began yelling, "I will hurt you." On December 22, 1999, the defendant went to the victim's workplace and refused to leave the premises, remaining there for approximately one hour despite requests for him to leave. When he eventually did depart, he gestured toward the victim as if he were going to grab her by the face. Later that same day, the defendant was waiting in the parking lot of the victim's workplace. Although the police were called, the defendant left prior to their arrival. The final incident involved a telephone call that the defendant placed to pastor Robert Mills, who was a pastor to both the defendant and the victim. During that conversation, the defendant stated that he was going to harm the victim.

because it was cumulative of other, more probative evidence of his intent to harm or to terrorize the victim, the prejudicial effect of that evidence outweighed its probative value. Even if we were to conclude that the prior misconduct evidence was cumulative and that its probative value thereby was diminished, the defendant retains the burden of showing that the probative value of that evidence, however minimal, was outweighed by the danger of unfair prejudice to him. In assessing the admissibility of prior misconduct evidence "[t]he problem is . . . one of balancing the actual relevancy of [that evidence] in light of the issues and the other evidence available to the prosecution against the degree to which the [fact finder] will probably be roused by the evidence." (Internal quotation marks omitted.) *State* v. *Baldwin*, 224 Conn. 347, 357, 618 A.2d 513 (1993).

In the present case, it is unlikely that the introduction of the prior misconduct evidence prejudiced the defendant. The prior misconduct evidence introduced by the state, while probative on the issue of intent, involved relatively minor incidents in comparison to the details of the assault and kidnapping with which the defendant was charged. Those incidents of prior misconduct involved isolated and short-term confrontations during which the defendant grabbed the victim and pulled her hair, shoved her and made a threatening statement regarding her to a third person.

By contrast, the conduct for which the defendant was convicted involved his kidnapping of the victim, and continuous physical and mental abuse of her during a three hour period. The "other evidence" relating to intent cited by the defendant consisted of testimony by the victim and Richardson regarding his words and actions during the kidnapping and assault. The victim testified that the defendant dragged her across a field and forced her into his car. She testified that the defendant repeatedly stated that he was going to kill her.

She stated that at one point, the defendant, while repeating that he was going to kill her, slapped her several times, grabbed her by the hair and then strangled her until she nearly lost consciousness. The victim testified that the defendant subsequently attempted to tape her mouth shut and that he stated that he was going to tie her up, place her in a basement and kill her. Richardson, the victim's neighbor, testified that while responding to the victim's screams, she witnessed the victim struggling with the defendant in the hallway. Richardson stated that she saw the defendant grab the victim by the hair and drag her out of the apartment, intentionally striking her head against the banister as they exited the building. Given the potent character of the evidence regarding the charged conduct, we conclude that the nature of the prior misconduct evidence was unlikely to arouse emotions of hostility and prejudice on the part of the fact finder. See *State* v. *Greene*, 69 Conn. App. 463, 472, 794 A.2d 1092 (admission of evidence harmless error where prejudicial impact of challenged evidence overshadowed by graphic nature of unchallenged evidence), cert. denied, 260 Conn. 934, 802 A.2d 89 (2002).

Moreover, because the case was tried to the court rather than to a jury, the defendant must overcome a greater presumption regarding the likelihood that the fact finder would misuse such evidence in a manner that could unduly prejudice the defendant. "A judge is presumed to have performed his duty properly unless the contrary appears." *Brash* v. *Brash*, 20 Conn. App. 609, 612, 569 A.2d 44 (1990). In the present case, the judge carefully weighed the probative value of all the prior misconduct evidence that the state wanted to introduce and admitted only four of the seven acts, concluding that those incidents were relevant on the issue of intent because they involved acts or threats directed at the actual victim in the present case. Never-

theless, having allowed the prior misconduct evidence, the court's memorandum of decision and its statements during the sentencing hearing emphasized the events underlying the criminal charges involved in the present case. From the record before us, we can discern no prejudicial impact resulting from the admission of the challenged evidence. Accordingly, we conclude that the court did not abuse its discretion in admitting the evidence of prior misconduct.

II

The defendant next claims that the court improperly allowed a state's witness to testify as an expert when that witness had not been disclosed as an expert prior to trial. The defendant claims that allowing that expert testimony (1) violated the rules applicable to criminal discovery pursuant to Practice Book § 40-11 (a) (4) and (2) infringed on his right to confrontation as guaranteed by the sixth amendment to the United States constitution. We disagree.

The following additional facts are necessary for our disposition of the defendant's claim. The state called Detective John Valleca of the New Haven police department as a witness during its case-in-chief. Valleca testified that during his initial interview with the victim, she was not very communicative, and that she appeared frightened and was shaking. The prosecution then asked Valleca whether the fact that the victim was uncommunicative was a surprise to him. Defense counsel objected on the ground of relevance, and the court sustained the objection. The prosecution then offered to qualify Valleca as an expert witness on the basis of his background and experience in dealing with victims of domestic abuse. Defense counsel objected on the ground that the state had not disclosed the witness as an expert. The court overruled that objection, noting that although Valleca was not disclosed specifically as

an expert, he nevertheless was disclosed as a witness prior to trial. Following his qualification as an expert witness, Valleca testified that it was his experience that victims of domestic abuse are frequently uncommunicative and frightened during initial interviews.

## A

"We review claims of improper admission of expert testimony under an abuse of discretion standard." (Internal quotation marks omitted.) *State* v. *Pereira*, 72 Conn. App. 107, 120, 806 A.2d 51 (2002), cert. denied, 262 Conn. 931, 815 A.2d 135 (2003). "[T]he trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed." (Internal quotation marks omitted.) *State* v. *Henry*, 72 Conn. App. 640, 654, 805 A.2d 823, cert denied, 262 Conn. 917, 811 A.2d 1293 (2002).

The defendant concedes that the state disclosed Valleca as a witness prior to the start of trial and does not dispute that the state laid an adequate foundation to qualify Valleca as an expert at trial. The defendant argues, however, that his right to mandatory discovery pursuant to Practice Book § 40-11 (a) (4) was violated when the court allowed the state to qualify Valleca as an expert witness and allowed Valleca to testify as such when he had not been disclosed on the witness list specifically as an expert. We disagree.

We note at the outset that the defendant's reliance on Practice Book § 40-11 (a) (4) is misplaced.[3] Section

[3] Practice Book § 40-11 (a) provides in relevant part: "Upon written request by a defendant . . . the prosecuting authority . . . shall promptly . . . disclose in writing the existence of and allow the defendant . . . to inspect, copy, photograph and have reasonable tests made on any of the following items . . .

"(4) Any reports or statements of experts made in connection with the offense charged including results of physical and mental examinations and of scientific tests, experiments or comparisons which are material to the

40-11 (a) (4) does not concern disclosure of expert witnesses. Rather, that section concerns disclosure of pretrial reports or statements of experts that are intended for use by the prosecuting authority as evidence at trial. As such, that section has no relevance to the present case, where the defendant challenges the admission of expert testimony during trial.

Disclosure of witnesses in criminal proceedings is governed by Practice Book § 40-13. Practice Book § 40-13 (a) provides in relevant part: "Upon written request by a defendant . . . the prosecuting authority . . . shall promptly . . . disclose to the defendant the names and, subject to the provisions of subsections (g) and (h) of this section, the addresses of all witnesses that the prosecuting authority intends to call in his or her case in chief and shall additionally disclose to the defendant: (1) any statements of the witnesses in the possession of the prosecuting authority or his or her agents, including state and local law enforcement officers, which statements relate to the subject matter about which each witness will testify . . . ." That rule does not require the state to disclose either the nature of the witness' proposed testimony or whether that witness will be testifying as a fact witness or as an expert witness. In the present case, the state disclosed to the defendant both Valleca's name and the official report that he prepared in connection with his investigation. In doing so, the state did all that was required of it under the applicable rules of practice.

Accordingly, we conclude that the court did not abuse its discretion in allowing Valleca to testify as an expert witness. See *State* v. *Henry,* supra, 72 Conn. App. 652–56 (where detective not designated specifically as expert prior to trial, court did not abuse discretion in allowing detective to testify as expert on matter within professional experience); *Annecharico* v. *Patterson,* 44 Conn.

---

preparation of the defense or are intended for use by the prosecuting authority as evidence in chief at the trial . . . ."

App. 271, 278–79, 688 A.2d 1341 (1997) (where former state police trooper disclosed as fact witness prior to trial, court did not abuse discretion in allowing former trooper's expert opinion testimony regarding point of impact of automobile collision on basis of observation of accident scene).

B

The defendant also claims that the eleventh hour disclosure of Valleca as an expert and the admission of his expert testimony improperly infringed on the defendant's right of confrontation as guaranteed by the sixth amendment to the United States constitution. Specifically, the defendant claims that the court's failure to grant a continuance deprived him of the opportunity to cross-examine Valleca effectively concerning the conclusion to be drawn from the victim's unresponsive demeanor. We are not persuaded.

"The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . . The right of confrontation is preserved if defense counsel is permitted to expose to the [trier of fact] the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Internal quotation marks omitted.) *State* v. *Abernathy*, 72 Conn. App. 831, 836, 806 A.2d 1139, cert. denied, 262 Conn. 924, 814 A.2d 379 (2002).

The defendant failed to request a continuance upon learning that Valleca would testify as an expert witness. The defendant also did not request a continuance following Valleca's testimony. The defendant does not cite any cases suggesting that a court has an obligation to inquire sua sponte if a party desires a continuance. Absent a request for a continuance, the court reasonably could have assumed that the defendant was satis-

fied with going forward with the trial at that time, and we cannot now speculate as to how the court would have responded to a timely request for a continuance.

Moreover, the record before us discloses that the constitutional standard of confrontation was satisfied and that the defendant was not prejudiced by the lack of a continuance. The defendant was given ample opportunity to cross-examine Valleca and to attempt to undermine the credibility of his testimony. The record reveals that the defendant used that opportunity to good advantage. For example, the defendant established that Valleca did not include in his report the fact that the victim was uncommunicative and appeared to be frightened despite Valleca's having testified during direct examination that such demeanor was typical of domestic abuse victims. He also elicited from Valleca the fact that the victim did not appear to have any bruises or other evidence of physical injury when he attempted to interview her. He also questioned Valleca concerning his failure to examine the defendant for evidence that he had assaulted the victim. Thus, it does not appear from the record before us that the defendant's cross-examination of Valleca was constitutionally impaired.

The judgment is affirmed.

In this opinion the other judges concurred.