### ALICE Y. CHYUNG *v.* CHI HAN CHYUNG
### (AC 24463)

Schaller, Dranginis and Peters, Js.

Argued October 13—officially released December 28, 2004

*Kevin F. Collins*, with whom, on the brief, was *Sheila S. Charmoy*, for the appellant (plaintiff).

*Allan M. Cane*, for the appellee (defendant).

*Opinion*

SCHALLER, J. In this marital dissolution appeal, the plaintiff, Alice Y. Chyung, challenges the financial orders rendered by the trial court in its judgment dissolving the parties' marriage. On appeal, the plaintiff argues that the court failed to consider and to apply the statutory factors set forth in General Statutes §§ 46b-81 and 46b-82. We disagree and, accordingly, affirm the judgment of the trial court.

The parties married on December 23, 1961, and, at the time of the trial, had no minor children. The court rendered judgment dissolving the marriage on May 27, 2003. The court found that the marriage had broken down irretrievably and that the defendant, Chi Han Chy-

ung, was the immediate cause of the breakdown as a result of his extramarital affair.[1]

The court entered orders regarding property distribution, alimony and other miscellaneous matters. As part of the dissolution decree, the court ordered each party to pay to the other the sum of $1 per year in periodic alimony. The defendant also was required to pay the plaintiff lump sum alimony in the amount of $350,000. The defendant retained title to certain commercial properties while the plaintiff retained title to the former marital home. Each party was responsible for the payment of his or her health insurance, medical expenses and attorney's fees. On June 13, 2003, the plaintiff filed a motion to reargue, which the court denied. On June 24, 2003, the defendant filed a motion for clarification, which the court also denied. This appeal followed. Additional facts will be set forth as necessary.

"The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is

---

[1] In its memorandum of decision, the court stated that "altogether too much precious trial time and attorney's fees were devoted by [the plaintiff] and her counsel in proving this point and in the process, to attempt to humiliate [the defendant] . . . ."

evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Demartino* v. *Demartino*, 79 Conn. App. 488, 492, 830 A.2d 394 (2003).

"A fundamental principle in dissolution actions is that a trial court may exercise broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. . . . In reviewing the trial court's decision under [an abuse of discretion] standard, we are cognizant that [t]he issues involving financial orders are entirely interwoven. The rendering of judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Kunajukr* v. *Kunajukr*, 83 Conn. App. 478, 481, 850 A.2d 227, cert. denied, 271 Conn. 903, 859 A.2d 562 (2004).

We apply that standard of review because it "reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties. . . . As pithily stated by Justice Parskey, 'in matters of this sort our role of necessity is not to work the vineyard but rather to prune the occasional excrescence.' *Koizim* v. *Koizim*, 181 Conn. 492, 498, 435 A.2d 1030 (1980)." (Citation omitted.) *Casey* v. *Casey*, 82 Conn. App. 378, 383, 844 A.2d 250 (2004).

On appeal, the plaintiff challenges several aspects of the court's financial orders. Specifically, the plaintiff argues that the court (1) failed to take into account the criteria set forth in §§ 46b-81 and 46b-82 when fashioning its alimony and property division orders, (2) improperly determined her earning capacity, (3) failed to find

the defendant's specific earning capacity and (4) improperly awarded her nominal alimony. We address each of those claims in turn.

## I

The plaintiff first claims that the court failed to take into account the criteria set forth in §§ 46b-81[2] and 46b-82[3] when fashioning its alimony and property division orders.[4] Specifically, the plaintiff argues that the court failed to consider (1) the defendant's fault in the breakdown of the marriage due to his affair and (2) his subsequent cohabitation with a domestic partner who paid many of his expenses. We are not persuaded.

"General Statutes § 46b-82 describes circumstances under which a court may award alimony. The court is to consider these factors in making an award of alimony, but it need not give each factor equal weight.

[2] General Statutes § 46b-81 (c) provides: "In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, *shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income.* The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." (Emphasis added.)

[3] General Statutes § 46b-82 provides in relevant part: "In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, *shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties* and the award, if any, which the court may make pursuant to section 46b-81 . . . ." (Emphasis added.)

[4] "The statutory factors for determining alimony in [General Statutes] § 46b-82 are almost identical to the factors used to distribute property in [General Statutes] § 46b-81 (c)." *Emanuelson* v. *Emanuelson,* 26 Conn. App. 527, 531, 602 A.2d 609 (1992).

. . . As long as the trial court considers all of these statutory criteria, it may exercise broad discretion in awarding alimony." (Internal quotation marks omitted.) *Porter* v. *Porter*, 61 Conn. App. 791, 795–96, 769 A.2d 725 (2001). In *Greco* v. *Greco*, 70 Conn. App. 735, 799 A.2d 331 (2002), we stated that "[o]ur statutory scheme, specifically [General Statutes] §§ 46b-81 and 46b-82, set[s] forth the criteria that a trial court must consider when resolving property and alimony disputes in a dissolution of marriage action. The court must consider all of these criteria. . . . *It need not, however, make explicit reference to the statutory criteria that it considered in making its decision or make express finding[s] as to each statutory factor. A ritualistic rendition of each and every statutory element would serve no useful purpose. . . . [T]he trial court is free to weigh the relevant statutory criteria without having to detail what importance it has assigned to the various statutory factors.*" (Emphasis added; internal quotation marks omitted.) Id., 739–40; see also *Simmons* v. *Simmons*, 244 Conn. 158, 175, 708 A.2d 949 (1998); *Brash* v. *Brash*, 20 Conn. App. 609, 612, 569 A.2d 44 (1990).

## A

The court found that the defendant had engaged in an extramarital relationship with Noriko Taniguchi. The court specifically discredited the defendant's testimony that he had first met Taniguchi in 1991 and that a romantic relationship subsequently resulted. The court expressly found that the defendant and Taniguchi had met substantially earlier and that their romantic involvement commenced well before 1991. The court described that relationship as "the single largest source of conflict" between the parties and "the immediate cause of the breakdown" of the marriage.

During the second day of the trial, the court suggested to the parties that they pursue a settlement to avoid

"airing everybody's dirty laundry" in open court. The court also stated that oftentimes, fault was a "relatively minor factor" taken into account when the decision is rendered, but that it was a factor to be considered. The court noted that it was well aware of the fact that the defendant had engaged in an extramartial affair with Taniguchi. At the conclusion of closing arguments, the court addressed the parties: "But I think I said early in this case . . . that this court is not an avenging angel, that this court does and is mandated to take into account fault, but that fault for want of a—you know, I don't know whether it's good, it, it's bad, but it's just sort of life in the twenty-first century, that it becomes a relatively minor factor in the decision." The court reiterated that point in its memorandum of decision: "As the court pointed out at least once during the course of the proceedings, while it has an obligation to consider fault, it does not assume the mantle of an 'avenging angel' to punish what are, in essence, acts of human frailty. The court has taken the [defendant's] actions into account in the overall context of the facts and evidence. It has accorded to them the weight it felt appropriate, which is undoubtedly significantly less than the [plaintiff] would have it."

It is clear that the court was mindful of its obligation to consider fault. It is equally clear that the court did not consider fault to be a factor having major significance or importance. The court was free to accord whatever weight it determined appropriate to each of the statutory factors. In this case, the court had discretion to afford the factor of fault less significance than the plaintiff would have preferred. The court, on several occasions, noted that it would consider fault. We assume that the court acts properly in the absence of an indication to the contrary. See *State* v. *Hoskie*, 74 Conn. App. 663, 669, 813 A.2d 136, cert. denied, 263 Conn. 904, 819 A.2d 837 (2003). The plaintiff's claim that the court's judg-

ment was unfair is based solely on the property distribution and the nominal alimony award. She fails, however, to consider or recognize the lump sum award of $350,000 that she received. We have reviewed the entire record, including the transcripts and evidence, and conclude that the plaintiff has failed to demonstrate that the court failed to take into account the defendant's fault. As we previously noted, the court was within its discretion to assign less weight to the issue of fault than to other factors. Accordingly, the plaintiff's claim must fail.

## B

The plaintiff also claims that the court failed to consider the defendant's cohabitation with his domestic partner, Taniguchi. Specifically, she argues that Taniguchi paid for many of the defendant's expenses and that those payments should have been considered by the court. In support of her claim, the plaintiff relies on *Unkelbach* v. *McNary*, 244 Conn. 350, 710 A.2d 717 (1998).

In *Unkelbach*, the defendant father filed a motion for modification of his child support obligation. Id., 353. The defendant's domestic partner, with whom he lived, testified that she had paid all of the defendant's mortgage and home equity loan payments, and property taxes and utilities. Id., 354. In addressing the defendant's motion for modification, the court included the amounts contributed by the defendant's partner in his gross income calculation. Id., 355. On appeal, our Supreme Court concluded that the court properly included such gifts in the defendant's gross income. Id., 365.

In the present case, the plaintiff argues that the contributions made by Taniguchi for the benefit of the defendant should have been considered by the court when making its financial awards. The court stated, however,

that in making its findings, it considered the testimony of the parties as well as the evidence presented. Such evidence included the testimony regarding Taniguchi's contributions.[5] We have no reason to conclude that the court failed to take into account the fact that many of the defendant's living expenses were paid by Taniguchi.

## II

The plaintiff next claims that the court improperly determined her earning capacity. Specifically, she argues that evidence of her past earning of $30,000 per year was too remote in time to be considered in determining her present earning capacity. We disagree.

The following additional facts are necessary for the resolution of the plaintiff's claim. The plaintiff testified that she had attended two years of junior college, one year of nursing school and one year of business classes. She initially had worked as a typist, but then obtained employment with the Owens-Corning Fiberglas Corp., where she gained additional skills by taking orders for fiberglass. She subsequently purchased a distributorship for cosmetics. In 1979, the plaintiff earned her real estate broker's license and, as a broker, earned $30,000 in 1987. After giving up her real estate broker's license in 1992, the plaintiff completed paralegal and title search courses, and obtained a retail manager and customer service position in which she earned approximately $12,000 per year. Finally, she worked part time for the federal government, earning $13,000 per year, before terminating her employment to prepare for trial. At the time of the trial, the plaintiff stated that she was sixty-four years old and, with the exception of chronic difficulty with her back, was in excellent health. The court

[5] We further note that the plaintiff failed to file a motion for articulation regarding that issue. See Practice Book § 66-5. It was the plaintiff's obligation to utilize that available procedural vehicle to provide this court with an adequate record for review.

stated that the plaintiff had "demonstrated an ability to earn between $12,000 and $30,000 per year on a [full-time] or part-time basis and fully [expected] that she [would] return to work after the conclusion of this action."

"While there is no fixed standard for the determination of an individual's earning capacity . . . it is well settled that earning capacity is not an amount which a person can theoretically earn, nor is it confined to actual income, but rather it is an amount which a person can realistically be expected to earn considering such things as his vocational skills, employability, age and health." (Citation omitted; internal quotation marks omitted.) *Bleuer* v. *Bleuer*, 59 Conn. App. 167, 170, 755 A.2d 946 (2000); see also *Lucy* v. *Lucy*, 183 Conn. 230, 234, 439 A.2d 302 (1981).

In the present case, the plaintiff's claim focuses on the court's finding that her earning capacity was $30,000. She argues that there was nothing in the record to suggest that she could earn that amount of income at this stage in her life and that the evidence of her having earned that amount was outdated. We conclude that the court correctly determined the plaintiff's earning capacity on the basis of the evidence before it. The court heard testimony regarding the plaintiff's educational background and employment history. Furthermore, the plaintiff represented that she earned $30,000 in 1987. The plaintiff's most recent employment was at the United States Census Bureau, where she earned $13,000 per year in a part-time position. The court had before it evidence that the plaintiff had earned $30,000 in the past. Furthermore, there was evidence before the court that the plaintiff had a reasonably extensive educational and employment history. Although the evidence concerning the $30,000 earning may have been somewhat dated, it provided the court with a basis for determining earning capacity. See *Carasso* v. *Carasso*,

80 Conn. App. 299, 309, 834 A.2d 793 (2003), cert. denied, 267 Conn. 913, 840 A.2d 1174 (2004). We conclude, therefore, that the court's determination that the plaintiff's earning capacity was between $12,000 and $30,000 was not clearly erroneous.

### III

The plaintiff next argues that the court failed to find the defendant's specific earning capacity. Specifically, she contends that the court's failure to identify the defendant's precise earning capacity resulted in an award that was based on speculation and conjecture. We disagree.

In its memorandum of decision, the court found that the defendant had earned both bachelor of arts and master of business administration degrees and was in good health. Additionally, the court noted that the defendant had a succession of jobs as a market analyst and had participated in the formation of his corporations. The court reviewed the defendant's past earnings, as well as his present financial affidavit. The court concluded that the defendant continued "to have the capacity to use his skill and experience in some gainful endeavor."

The court stated that in addition to the testimony of the parties and the enumerated statutory factors, it considered the earning capacities of the parties when it crafted its financial orders. "A judge is presumed to have performed [her] duty properly unless the contrary appears." (Internal quotation marks omitted.) *Miller* v. *Miller*, 22 Conn. App. 310, 314, 577 A.2d 297 (1990); see also *Brash* v. *Brash*, supra, 20 Conn. App. 612. We must presume, in the absence of any evidence to the contrary, that the court properly considered the defendant's earning capacity when its award was drafted.

The plaintiff has failed to provide us with any statute, case law or rule of practice that requires the trial court

to specify an exact earning capacity. It is the plaintiff's burden on appeal to demonstrate that the court's actions were clearly erroneous. She has failed to do so. See *Mihalyak* v. *Mihalyak*, 11 Conn. App. 610, 620, 529 A.2d 213 (1987).

We also note that it is the plaintiff's burden to provide this court with an adequate record for our review. See Practice Book § 61-10. The plaintiff failed to file a motion for articulation of the court's decision. See Practice Book § 66-5. "It is well settled that [a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal. . . . The . . . failure to seek an articulation of the trial court's decision to clarify the aforementioned issues and to preserve them properly for appeal leaves this court without the ability to engage in a meaningful review." (Internal quotation marks omitted.) *Bebry* v. *Zanauskas*, 81 Conn. App. 586, 594, 841 A.2d 282 (2004). Here, the plaintiff failed to utilize an available procedural vehicle to clarify the court's decision, namely, the defendant's specific earning capacity. In short, we conclude that the court did not abuse its discretion by not finding the defendant's specific earning capacity.

IV

The plaintiff's final claim is that the court improperly ordered nominal periodic alimony.[6] Specifically, she

---

[6] "[W]e recognize that a nominal alimony award may often be appropriate when the present circumstances will not support a substantial award. Nominal awards, however, are all that are necessary to afford the court continuing jurisdiction to make appropriate modifications. We have stated that because some alimony was awarded, [one dollar per year] with no preclusion of modification, if the circumstances warrant, a change in the award can be obtained at some future date." (Internal quotation marks omitted.) *Simmons* v. *Simmons*, supra, 244 Conn. 185–86.

argues that the court disregarded the disparity in both the incomes and earning capacities of the parties. That argument fails to recognize the lump sum alimony award of $350,000 that the court ordered the defendant to pay to the plaintiff.

Our review of the record, transcript and briefs reveals that the court properly considered the statutory criteria, the evidence and the financial affidavits of the parties. We conclude that the court did not abuse its discretion by ordering nominal alimony in light of the facts and circumstances of this case.

The judgment is affirmed.

In this opinion the other judges concurred.