EUGENE M. DOMBROWSKI *v.* PAMELA
NOYES-DOMBROWSKI
(SC 17312)

Sullivan, C. J., and Borden, Norcott, Palmer and Vertefeuille, Js.

Argued January 12—officially released March 29, 2005

*Lori Welch-Rubin*, with whom, on the brief, was *David Rubin*, for the appellant (defendant).

*Trisha M. Morris*, with whom was *Bernard C. Christianson*, for the appellee (plaintiff).

*Opinion*

NORCOTT, J. The sole issue in this appeal is the proper characterization and distribution of the lottery winnings of the defendant, Pamela Noyes-Dombrowski, attendant to a dissolution of marriage action. The defendant appeals[1] from the judgment of the trial court that awarded the plaintiff, Eugene M. Dombrowski, a nonmodifiable one half of the defendant's future lottery payments minus his current salary, and classified that money as alimony for the purpose of allowing the defendant to take a tax deduction for it. On appeal, the defendant claims that the trial court improperly: (1) characterized as alimony lottery proceeds that actually are marital property; and (2) considered gender-based presumptions in rendering the award. We affirm the judgment of the trial court.

The following relevant facts are undisputed. The plaintiff and the defendant were married on November 4, 1989. Both are high school graduates, although the

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

plaintiff has had some additional technical training. The plaintiff was employed by Metro-North Commuter Railroad for the entire duration of the marriage. The defendant, by contrast, worked at the Knights of Columbus for the first seven years of the marriage and then no longer was employed. At the time of the dissolution on September 19, 2003, the plaintiff was forty-one years old and the defendant was forty-three; they were both in good health and did not have any children. Their marriage ultimately was dissolved on grounds of irretrievable breakdown, which the trial court noted had nothing to do with the lottery winnings.

Both parties contributed financially to their marital relationship, even though they maintained separate checking accounts and had independent social lives.[2] Initially, they lived in a condominium that the plaintiff owned before the marriage. Prior to the lottery win, he generally paid the expenses related to the condominium, as well as 60 percent of the joint household expenses, while the defendant paid for entertainment, as well as the remaining household expenses, commensurate with the difference in their respective salaries.

Since her early twenties, the defendant regularly spent $3 of her money several times per week purchasing lottery tickets; this was a practice that the plaintiff discouraged. In 1992, the defendant won a $7 million lottery jackpot, which she elected to receive in annual installments of approximately $384,680 over a twenty year period. The defendant initially hid the news of her winnings from her husband for five weeks. In court, she testified that she considered it to be her own money because she had purchased the ticket and the plaintiff never had supported her in that endeavor. Indeed, for

---

[2] The plaintiff testified that from 1992 until 2000, he went out drinking with his friends a minimum of three times per week without ever inviting the defendant, who was unable to drive until 1998, to come along with them.

the remaining time that the couple was married, the defendant had full control over all purchases made with the lottery money.

In 1995, three years after her win, the defendant used some of the lottery proceeds to purchase a home, which she put in their joint names. Additionally, she purchased a 2001 GMC truck for the plaintiff, opened joint investment accounts and began paying the majority of the bills, including the mortgage and utility bills, as well as the plaintiff's credit card bills. The defendant essentially took over the plaintiff's previous proportion of financial contributions to the marriage. Meanwhile, the defendant continued to drift further apart from the plaintiff, emotionally and otherwise, during this time, and ultimately decided to move out of their home eighteen months prior to their dissolution.[3]

Upon dissolution, after a hearing, the trial court concluded that the parties had treated their marriage as an *economic* partnership although not a *social* partnership; accordingly, it divided their assets so as to award the plaintiff one half of all of them, excluding the home, for which he would receive a credit. It also awarded the plaintiff the nonmodifiable sum of one half of the defendant's future annual lottery proceeds, minus his current salary,[4] and characterized those annual payments as alimony, specifying its intentions regarding the tax consequences thereof. Specifically, the court stated that "the continuing lottery payments, one half minus the [plaintiff's] yearly salary should go to the [plaintiff] and that's pre-tax. The court would classify

---

[3] A few months prior to filing for divorce, the plaintiff asked the defendant to attend marriage counseling but she refused to do so.

[4] The court specified that the nonmodifiable aspect of one half of the annual lottery payments meant that "if the [plaintiff] decides he is going to terminate his employment he still gets one half [of the annual payments] less his current salary."

that as alimony so the [defendant] can take the tax deduction . . . ." This appeal followed.

On appeal, the defendant claims that the trial court improperly characterized the lottery winnings as alimony as opposed to marital property because: (1) the trial court treated the lottery payments as marital property in its division of assets notwithstanding the label of alimony; and (2) the trial court's order is inconsistent with the definition of alimony set forth in the Internal Revenue Code. The defendant also claims that the trial court improperly based its decision regarding the division of lottery proceeds on a gender assumption in violation of General Statutes §§ 46b-81 and 46b-82.[5] In response, the plaintiff contends that: (1) there is no merit to the defendant's argument that the trial court improperly characterized the lottery proceeds because she has not suffered any harm as a result of the alimony classification; and (2) the trial court's gender-based remark did not violate the law because it was not the basis for the trial court's order, but a response to an earlier comment made by the defendant's counsel that "my client testified that . . . [s]he doesn't need a man to support her. Well, he's going out of this marriage and he can't support himself is what he's telling us, or, he's got no problem supporting himself. . . . He's saying that since she got lucky in a situation where she had her assets and he had his, that that stroke of [light-

_____

[5] General Statutes § 46b-81 (c) provides in relevant part: "In fixing the nature and value of the property, if any, to be assigned, the court . . . shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." General Statutes § 46b-82 sets forth a similar universe of factors that courts must consider when making orders of alimony.

ning], of course, I should get it." We disagree with the defendant, and, accordingly, we affirm the judgment of the trial court.

Preliminarily, we set forth the standard of review. "An appellate court will not disturb a trial court's orders [financial or otherwise] in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Morris* v. *Morris*, 262 Conn. 299, 305, 811 A.2d 1283 (2003). "We apply that standard of review because it reflects the sound policy that the trial court has the unique opportunity to view the parties and their testimony, and is therefore in the best position to assess all of the circumstances surrounding a dissolution action, including such factors as the demeanor and the attitude of the parties." (Internal quotation marks omitted.) *Chyung* v. *Chyung*, 86 Conn. App. 665, 668, 862 A.2d 374 (2004).

The defendant's first claim, namely, that the trial court improperly classified the lottery winnings as alimony because those winnings are essentially marital property, is unpersuasive. Although the trial court would have been within its discretion in treating the lottery award as marital property, under the circumstances of this case, it was also within the court's discretion in treating the award as an income stream and the defendant's payments from it as alimony.

Additionally, the trial court's order was consistent with both the nature and the purpose of alimony. "[T]he purpose of both periodic and lump sum alimony is to provide continuing support." (Internal quotation marks omitted.) *Gay* v. *Gay*, 266 Conn. 641, 647, 835 A.2d 1

(2003). By contrast, "[t]he purpose of a property division pursuant to a dissolution proceeding is to unscramble existing marital property in order to give each spouse his or her equitable share at the time of dissolution." *Smith* v. *Smith*, 249 Conn. 265, 275, 752 A.2d 1023 (1999). In the present case, the defendant testified that she viewed her annual lottery payments as her salary. This is supported by her assumption of the lion's share of the marital expenses after her win; previously, it had been the plaintiff who had shouldered the bulk of the financial burden, commensurate with the difference in the couple's salaries. These facts suggest that the trial court was within its discretion in treating the lottery winnings as alimony.

Moreover, alimony typically is modifiable, while dispositions of marital property are not. See General Statutes § 46b-86 (a).[6] In its order, the trial court specifically stated that it was making the distribution of lottery proceeds nonmodifiable, which would have been unnecessary had the trial court intended to treat the proceeds as marital property. The trial court also unequivocally stated in its order that the payments be considered alimony. Indeed, it is difficult to see how the trial court's directive on this issue could have been more clearly expressed.[7]

We first note that, viewed properly, the trial court's order was, in effect, not an order that operated directly

[6] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification . . . any final order for the periodic payment of permanent alimony or support or an order for alimony . . . may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party . . . . This section shall not apply to assignments under section 46b-81 [respecting marital property] . . . ."

[7] We note that if there was a genuine question as to the trial court's intentions with respect to the classification of the lottery proceeds, the defendant could have filed a motion for articulation pursuant to Practice Book § 66-5 to clarify this issue, but she failed to do so.

on the annual lottery payments. It was, instead, an order directed at the defendant to pay to the plaintiff an annual amount measured by one half of those annual payments, minus the plaintiff's annual salary. In this connection, we also note that the trial court was unable to make an order directly to the lottery commission requiring it to allocate the annual proceeds between the plaintiff and the defendant. Thus, the only way for the trial court to accomplish its obvious intention to make such an allocation was to order the defendant to share the proceeds with the plaintiff. We note further that the only way for the trial court to effectuate its equally obvious intention to allocate the payments equally in value between the parties was to characterize the defendant's payments to the plaintiff as alimony; otherwise, the payments to the defendant by the lottery commission would have been fully taxable to her, and her subsequent payments to the plaintiff would have been neither taxable to him nor deductible by her.

The defendant next claims that, notwithstanding its intentions, the trial court improperly classified the lottery winnings as alimony because they do not meet the test for alimony set forth in 26 U.S.C. § 71 (b) (1) (D) of the Internal Revenue Code, which requires the liability of the payor to terminate at the death of the payee. This claim is similarly untenable. Pursuant to 26 U.S.C. § 71 (b) (1) (D), alimony requires that there be "no liability to make any such payment for any period after the death of the payee spouse and . . . no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse."[8]

---

[8] Section 71 (b) (1) of title 26 of the United States Code provides: "The term 'alimony or separate maintenance payment' means any payment in cash if—

"(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

"(B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

Furthermore, under 26 U.S.C. § 215 (a),[9] an alimony order that meets this requirement results in taxability to the payee and deductibility to the payor. It is clear from this record that the trial court intended its order to meet these requirements. Thus, it must be read as implicitly providing for the termination of the defendant's obligation upon the death of the plaintiff.

Moreover, the principle that, absent specific language in the decree, alimony payments terminate upon the death of either party is consistent with our jurisprudence. The general rule is that, absent contrary language, the death of the obligor spouse terminates the obligation to pay periodic alimony; see 24A Am. Jur. 2d 172, Divorce and Separation § 786 (1998); and the nature of alimony as spousal support means that it ends upon the death of the obligee spouse. There is no Connecticut statute addressing this issue, and we are unaware of any case in which this court has ever held that alimony orders, which do not explicitly address the contingency of death, survive the death of either party. See *Harrison* v. *Union & New Haven Trust Co.*, 147 Conn. 435, 439, 162 A.2d 182 (1960)[10] ("[o]nly if the

"(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

"(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse."

[9] Section 215 (a) of title 26 of the United States Code provides: "In the case of an individual, there shall be allowed as a deduction an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year."

[10] In *Harrison* v. *Union & New Haven Trust Co.*, supra, 147 Conn. 436, the alimony order "provided that the decedent pay to the plaintiff from his income the sum of $15 per week during her life . . . ." (Internal quotation marks omitted.) This court concluded that "the express terms of the award clearly manifest[ed] an intention that it should cease upon the death of the divorced husband, because that event would terminate the receipt of any income by him." Id., 439. The holding, therefore, was based upon the specific

decree, properly construed, actually ordered payments of periodic alimony after the decedent's death, might we have to consider whether the court had the power to make such an order"). By contrast, we *have* given effect to alimony orders with specific directives. See *McDonnell* v. *McDonnell*, 166 Conn. 146, 150–51, 348 A.2d 575 (1974) (concluding that husband's estate was obligated to continue making alimony payments only because decree "clearly and unequivocally" imposed such obligation upon husband and his " 'heirs, executors and representatives' "). Thus, the trial court order, which was devoid of any language indicating that the defendant's obligation would continue past the plaintiff's death, was fully consistent with the general law of alimony. Indeed, the plaintiff conceded this point of law during oral argument before this court.[11]

The defendant's final claim is that the trial court improperly based its division of the lottery proceeds on a gender-based presumption in violation of §§ 46b-81 and 46b-82. Specifically, she contends that the trial court improperly considered gender-based presumptions in rendering the award when it commented, "[i]f this were a situation where the husband had the money . . . there would be absolutely no argument that the wife would get a share of the windfall . . . ." Although the trial court's comment may have been imprudent,

---

source of alimony, and the impossibility of obtaining payments from that source after the decedent-payor's death.

[11] "[The Plaintiff]: [The trial court's comment] certainly didn't supplant ample evidence of the purpose of alimony which is to support the other spouse when that support is needed.

"[The Court]: And counselor, that's during the lives of the parties?

"[The Plaintiff]: That is during the lives of the parties, Your Honor.

"[The Court]: And so you would—would you acknowledge that this order as currently constituted is an award of alimony consistent with the proposition or principle that it would terminate upon the death of the payor or payee, whichever comes first?

"[The Plaintiff]: Yes, Your Honor. I think I can answer it no other way on the basis of our case law or the statutes."

there is no evidence that it influenced the court's division of the proceeds.

Sections 46b-81 and 46b-82, respectively, describe the circumstances under which a trial court may make assignments of property and award alimony. See footnote 5 of this opinion. "The statutory factors for determining alimony in [General Statutes] § 46b-82 are almost identical to the factors used to distribute property in [General Statutes] § 46b-81 (c)." (Internal quotation marks omitted.) *Chyung* v. *Chyung*, supra, 86 Conn. App. 669 n.4. They include: "the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81," as well as the custody of minor children, if any. General Statutes § 46b-82 (a). "The court must consider all of these criteria. . . . It need not, however, make explicit reference to the statutory criteria that it considered in making its decision or make express finding[s] as to each statutory factor." (Internal quotation marks omitted.) *Chyung* v. *Chyung*, supra, 670. Nor need it give each factor equal weight. Id., 669.

In the present case, the marriage endured for fourteen years and terminated as a result of an irretrievable breakdown that was not the exclusive fault of either party. Both parties remain in good health and both have employment skills. In fact, the plaintiff remains employed by Metro-North Commuter Railroad at a salary of approximately $50,000 per year, which the trial court accounted for by ordering it to be deducted from the lottery payments he will receive. Although neither party has any extraordinary needs, after the lottery win, the defendant voluntarily assumed responsibility for paying the bulk of the plaintiff's expenses, including

some of his credit card bills, and supported him in that fashion until the date of dissolution. On the basis of these facts, the court-ordered alimony equal to one half of the lottery proceeds minus the plaintiff's salary was within the court's broad discretionary power.

Moreover, it is quite possible that the trial court's comment was a response to an earlier statement by the defendant that could be construed as suggesting that the plaintiff, as a male, should be able to support himself. In any case, where, as here, there is ample evidence to support such an order under the statute, assigning undue significance to a comment made by the trial court during a hearing is purely speculative. Accordingly, we conclude that the trial court did not abuse its discretion.

The judgment is affirmed.

In this opinion the other justices concurred.