KATHERINE PACCHIANA *v.* EDWARD MCAREE
(AC 25567)

Pellegrino, Flynn and Bishop, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued November 28, 2005—officially released February 28, 2006

*Lori Welch-Rubin*, with whom, on the brief, was *Timothy F. Butler*, for the appellant (defendant).

*Gary I. Cohen*, for the appellee (plaintiff).

*Opinion*

BISHOP, J. The defendant, Edward McAree, appeals from the judgment of dissolution, in which the trial court dissolved the parties' marriage, ordered the defendant to pay a lump sum to the plaintiff, Katherine Pacchiana, and required him to pay counsel fees on behalf of the plaintiff. On appeal, the defendant claims that the court (1) improperly modified its dissolution judgment, and (2) abused its discretion by awarding the plaintiff a lump sum payment and attorney's fees. We affirm the judgment of the trial court.

The following factual and procedural history is relevant to our disposition of the defendant's claims on appeal. The plaintiff and the defendant were married on December 6, 1997. No children were born to the marriage. The plaintiff filed this dissolution action on November 15, 2001, in which she requested an equitable distribution of assets, alimony and an award of counsel fees.[1]

Following a hearing, the court issued its memorandum of decision in which it made the following relevant factual findings. Both parties were educated and employed before the marriage, although at the time of the marriage the plaintiff was unemployed and receiving unemployment compensation. The plaintiff, who is fluent in Italian, holds a bachelor's degree from Hobart and William Smith Colleges and two master's degrees, one in travel and tourism from the New School for Social Research, and another in architecture from Harvard University. The plaintiff was employed as an architect in New York City for two years until the spring of 1997, earning an annual salary of approximately $35,000. In 1999 and 2000, the plaintiff worked as an architect in a Greenwich firm, earning $44,332.29 in 2000. Additionally, the court found that during the marriage, the plaintiff spent her earnings for her personal needs and uses.

As to the defendant, the court made the following relevant findings. The defendant, who graduated with a bachelor's degree from the University of Michigan and holds a master's degree in business administration from the University of Notre Dame, is a professional investor. Prior to the marriage, he had worked for a brokerage house, attaining peak annual earnings of

---

[1] The plaintiff had begun another dissolution action in November, 1998, but the parties subsequently reconciled.

$300,000 in 1994.[2] In 1990, the defendant and his brothers organized a money management business in which the defendant served as managing partner until November, 2001. As of December, 2003, the defendant's capital account was $3,763,000, and the money management firm's assets were $8,859,735. The defendant's interest in the money management firm was illiquid as of the date of the marital dissolution judgment. Between February, 1998, and July, 2001, the defendant received capital distributions totaling $592,078 from Prescott Investors, Inc., but he lost his investment in Lappin Capital Management.

The court further found that the home in which the parties resided was purchased by the defendant in 1996 for $462,500 and was subject to a mortgage of $323,750, which the defendant paid off using his share of the proceeds from two liquidations of limited partnerships. During 1996 and 1997, the defendant spent $545,644.06 renovating the property, which had a fair market value of $1.3 million as of October, 2003. Additionally, as to the home, another $79,928.66 in renovation expenses was incurred between July and December, 1999.

The court also found that the plaintiff hosted several parties at the marital home between February, 1998, and October, 2001. The defendant provided $10,000 monthly to the plaintiff to run the household, and he covered any additional household expenses. The court found that the plaintiff routinely had access to an American Express card for her personal needs and that she received approximately $67,054 in checks and automatic teller machine withdrawals between 1998 and 2001. Finally, the court found that during the marriage,

---

[2] The record reflects that the parties' joint federal income tax return in 1998 stated their adjusted gross income as $61,308. In 1999, the parties reported an adjusted gross loss of $173,825. In 2000, the parties' adjusted gross loss was stated to be $43,949, later amended to include the plaintiff's earnings of $3500. In 2001, the parties filed separate tax returns.

the defendant purchased several expensive items of jewelry for the plaintiff, and that the couple traveled frequently and extensively.

The record reveals pendente lite orders, effective as of July 29, 2002, requiring the defendant to pay to the plaintiff alimony of $2500 a month, medical coverage and motor vehicle insurance coverage, as well as $5000 for an expert witness.

The court dissolved the marriage on the ground of irretrievable breakdown. As to the cause of the breakdown, the court found that the parties were equally responsible for their marriage's ultimate denouement.

In its memorandum of decision, following its factual recitations regarding the parties and their marriage, the court entered orders dissolving the marriage and making its financial awards. In light of its findings regarding the parties, and mindful of the relative brevity of the marriage, the court expressed its view that the rehabilitative purposes of periodic alimony had been achieved during the nearly two years in which the plaintiff received alimony pendente lite. The court did conclude, however, that the plaintiff was "entitled to a lump sum alimony award as part of the division of assets." The court framed its financial orders as follows: "The plaintiff is awarded the lump sum of $480,000, payable in four equal installments . . . . No periodic alimony is awarded to either party. . . . The defendant shall pay to the plaintiff as an allowance to prosecute $20,000 due and payable on August 15, 2004." This appeal followed. It is the juxtaposition of the terms "lump sum alimony" and "division of assets" in one sentence that is at the core of the defendant's appeal.

On appeal, the defendant claims that the court (1) improperly modified its dissolution judgment, and (2) abused its discretion by awarding the plaintiff the stated

monetary sum and attorney's fees. We address each claim in turn.

I

The defendant first claims that the court improperly modified its dissolution judgment. Specifically, the defendant claims that the court improperly changed its initial order of lump sum alimony to a property division by its remarks at a subsequent hearing on February 7, 2005.

In order to discuss the defendant's claim adequately, we note the following additional procedural history. Following his receipt of the June 4, 2004 decree of marital dissolution, the defendant initiated this appeal on June 23, 2004. Subsequently, by pleading dated June 28, 2004, the plaintiff filed a motion to terminate the automatic stay of execution regarding the court's award of counsel fees and the lump sum payment. In response, on October 14, 2004, the court issued an order terminating the automatic stay only as to the lump sum payment due on July 4, 2004. On the basis of the plaintiff's allegation that the defendant did not make the required July 4, 2004 payment, the court conducted a further hearing on February 7, 2005, during which the court made the following comment in reference to its judgment order that the defendant pay the plaintiff a lump sum due in installments: "It is a lump sum. I didn't label it alimony in the orders. That is my ruling." On the basis of that comment made by the court on February 7, 2005, the defendant now claims that the court improperly modified its initial "alimony" order, changing it from "alimony" to an "assignment of property."

Although we are mindful of the distinction between an order for the payment of alimony made pursuant to General Statutes § 46b-82 and an assignment of property made pursuant to General Statutes § 46b-81; see *Blake* v. *Blake*, 211 Conn. 485, 497–98, 560 A.2d 396 (1989), we do not reach the merits of the defendant's

claim that the court later modified its judgment order because the only order from which an appeal was filed by the defendant is the marital dissolution judgment dated June 4, 2004. Although the defendant filed a motion to amend the transcript statement to include the February 7, 2005 hearing, he did not amend his appeal to claim any impropriety in the court's February 7, 2005 proceedings. Accordingly, we decline to review the defendant's present claim that the statement made by the court on February 7, 2005, in regard to its judgment award, constituted an impermissible modification of the marital dissolution judgment. See Practice Book § 61-9; *Jewett* v. *Jewett*, 265 Conn. 669, 673 n.4, 830 A.2d 193 (2003); cf. *Pritchard* v. *Pritchard*, 92 Conn. App. 327, 340, 885 A.2d 207 (2005).

## II

Next, the defendant claims that the court abused its discretion by awarding the plaintiff a lump sum payment and by ordering him to pay the attorney's fees of the plaintiff. Specifically, the defendant challenges the propriety of the court's lump sum award of $480,000 to the plaintiff on the ground that it did not conform to the requirements of § 46b-82 if it was a lump sum alimony award and, in the alternative, that it did not comport with § 46b-81 if it constituted a division of property. The defendant also claims that the court's award of attorney's fees did not conform to the requirements of General Statutes § 46b-62. We are not persuaded.[3]

---

[3] Additionally, the defendant seeks to have this court clarify whether the monetary award made in the marital dissolution judgment constitutes alimony or a division of property. We decline the invitation. Although we recognize the inherent ambiguity in the monetary award, it is not this court's function to interject itself into the trial court's reasoning. To be sure, the order is ambiguous. In the assessment portion of its memorandum of decision, the court made the following comment regarding the plaintiff's award: "The court concludes that she is entitled to a lump sum alimony award as part of the division of assets." In the order part of the memorandum of decision, however, the court framed its order simply as a "lump sum" without designating it as either alimony or an assignment of property.

Notwithstanding that ambiguity, and mindful that an award of lump sum alimony made pursuant to General Statutes § 46b-82 serves a purpose differ-

A

We first address the defendant's claim that the court abused its discretion in awarding the plaintiff the lump sum of $480,000. Before discussing the merits of his claim, we address the applicable standard of review. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Jewett* v. *Jewett*, supra, 265 Conn. 681.

"Sections 46b-81 and 46b-82, respectively, describe the circumstances under which a trial court may make assignments of property and award alimony. . . . The statutory factors for determining alimony in [General Statutes] § 46b-82 are almost identical to the factors used to distribute property in [General Statutes] § 46b-81 (c). . . . They include: the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources

ent from an assignment of property made pursuant to General Statutes § 46b-81, we decline the defendant's invitation to clarify the order because it is not the function of a reviewing court to clarify ambiguities in a trial court's orders. To the extent that an award of alimony may have ramifications for the parties that differ from its effects as an assignment of property, the proper venue for the parties to have sought clarification was in the trial court. "Our rules regarding the need to seek an articulation of the factual basis of the trial court's decision are well settled. . . . [W]here the trial court's decision is ambiguous, unclear or incomplete, an appellant must seek an articulation . . . or this court will not review the claim." (Citation omitted; internal quotation marks omitted.) *Advanced Financial Services, Inc.* v. *Associated Appraisal Services, Inc.*, 79 Conn. App. 22, 39–40, 830 A.2d 240 (2003). Finally, in this instance, because of the adequacy of the court's factual findings, we are able to assess the defendant's claim that the court's order constitutes an abuse of discretion regardless of whether it is an alimony award or a property assignment.

of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, as well as the custody of minor children, if any. General Statutes § 46b-82 (a). The court must consider all of these criteria. . . . It need not, however, make explicit reference to the statutory criteria that it considered in making its decision or make express finding[s] as to each statutory factor." (Citations omitted; internal quotation marks omitted.) *Dombrowski* v. *Noyes-Dombrowski*, 273 Conn. 127, 137, 869 A.2d 164 (2005). More close in time to the enactment of Public Acts 1973, No. 73-373, which revised our marital dissolution statutes; *Doe* v. *Doe*, 244 Conn. 403, 433, 710 A.2d 1297 (1998); our Supreme Court observed: "Although provisions for assignments of property and awards of alimony are now contained in separate statutes, the standards by which courts determine the amount of property assigned and alimony awarded are the same. . . . The distinguishing characteristic of property assignment is the court's duty to consider the contribution of each of the parties in the acquisition, preservati*on or appreciation in value of their respective estates.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Pasquariello* v. *Pasquariello*, 168 Conn. 579, 583, 362 A.2d 835 (1975).

In making its orders, whether as an assignment of property or as an award of alimony, a trial court is afforded a wide latitude of discretion. See *Chyung* v. *Chyung*, 86 Conn. App. 665, 668, 862 A.2d 374 (2004), cert. denied, 273 Conn. 904, 868 A.2d 744 (2005). Here, the court made specific findings as to the length of the marriage, the cause of the marital breakdown, the age, health, educational attainment, the amount and sources of income of each party, and their relative participation in the acquisition, preservation and appreciation of assets. Additionally, in framing its orders, the court stated that it was taking into consideration relevant

statutory and decisional law. Although the court did not cite either § 46b-81 or § 46b-82 in fashioning its order for the payment of a lump sum, the record supports the inference that the court properly considered the statutory criteria relevant to either an award of alimony or an assignment of property. Thus, we conclude that the court, in making its order, did not abuse its discretion. See *Dombrowski* v. *Noyes-Dombrowski*, supra, 273 Conn. 138.

## B

The defendant next claims that the court abused its discretion in awarding the plaintiff attorney's fees. We disagree.

When making an order for the payment of attorney's fees, the court must consider factors that are essentially the same as those that must be considered when awarding alimony. *Maguire* v. *Maguire*, 222 Conn. 32, 43, 608 A.2d 79 (1992). "Section 46b-62 governs the award of attorney's fees in dissolution proceedings and provides that the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in [General Statutes §] 46b-82. These criteria include the length of the marriage, the causes for the . . . dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to [§] 46b-81 . . . . General Statutes § 46b-82. In making an award of attorney's fees under § 46b-82, [t]he court is not obligated to make express findings on each of these statutory criteria." (Internal quotation marks omitted.) *Jewett* v. *Jewett*, supra, 265 Conn. 693.

"Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of [his

or] her rights because of lack of funds. . . . Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. . . . An exception to the rule . . . is that an award of attorney's fees is justified even where both parties are financially able to pay their own fees if the failure to make an award would undermine its prior financial orders . . . . Whether to allow counsel fees [under §§ 46b-62 and 46b-82], and if so in what amount, calls for the exercise of judicial discretion. . . . An abuse of discretion in granting counsel fees will be found only if [an appellate court] determines that the trial court could not reasonably have concluded as it did." (Internal quotation marks omitted.) Id., 694.

In the present case, the plaintiff's attorney submitted an itemized statement setting forth attorney's fees for $26,170.11.[4] The court awarded the plaintiff a large portion of attorney's fees, $20,000, on the basis of its conclusion that "an allowance should be made so as to avoid undermining the balance of the orders." As this court has stated, the trial court is uniquely qualified to determine whether its other financial orders would be undermined by the denial of a request for attorney's fees. *Puris* v. *Puris*, 30 Conn. App. 443, 448–53, 620 A.2d 829 (1993). Accordingly, on appeal, it is not our function to decide anew whether requiring the plaintiff to pay her own counsel fees would have undermined the court's other financial orders, but rather whether the record supports the court's conclusion in that regard. Here, the court made several relevant findings concerning the plaintiff's relatively low level of earnings, notwithstanding her educational attainment, and the

[4] We note that the defendant does not challenge the amount of the attorney's fees of the plaintiff or the factors utilized by counsel in arriving at the stated amount. Rather, the defendant claims the court improperly required him to pay an allowance toward those fees in light of the lump sum awarded by the court.

defendant's periodic receipt of substantial distributions from his investment activities. Additionally, the court received the parties' respective financial affidavits reflecting their relative assets and liabilities. Also, the court determined not to award periodic alimony to the plaintiff. In combination, those factors support the court's conclusion that to deny an allowance toward the plaintiff's counsel fees would frustrate the purpose of its other financial orders. Finally, as a practical matter, because the court could have increased its lump sum order by a sum equal to the plaintiff's counsel fees, and such an order, we believe, would have been within the court's discretion, we will not find fault with the court's total allocation of funds to be made available to the plaintiff from the defendant. Accordingly, we find no support in the record for the defendant's claim that the court abused its discretion in making an award of counsel fees.

The judgment is affirmed.

In this opinion the other judges concurred.